Anne L. Weismann
D.C. Bar No. 298190
Kimberly D. Perkins
D.C. Bar No. 481460
Citizens for Responsibility
and Ethics in Washington
1400 Eye Street, N.W.
Suite 450
Washington, D.C.  20005
202-408-5565

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON 1400 Eye Street, N.W., Suite 450 Washington, D.C.  20005 : : : : : Plaintiff, : : v. : Civil Action No. : INTERNAL REVENUE SERVICE 1111 Constitution Avenue, N.W. Washington, D.C. 20224 : : : : Defendant. : | |

## COMPLAINT FOR
## DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

1.  This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. §552, as

amended, as well as agency FOIA regulations, challenging the failure of the Internal Revenue

Service (IRS) to fulfill the request of Plaintiff for documents relating to the investigatory

procedures and practices of organizations recognized as exempt by the IRS pursuant to section

501(c)(3) of the Internal Revenue Code (IRC).

2. This case seeks declaratory relief that Defendant is in violation of the FOIA and agency regulations for failing to fulfill Plaintiff's request for records, and injunctive relief that Defendant immediately and fully comply with Plaintiff's request under the FOIA.

## JURISDICTION AND VENUE

3. This Court has both subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. §552(a)(4)(B). This Court also has jurisdiction over this action pursuant to 28 U.S.C. §1331. Venue lies in this district under 5 U.S.C. §552(a)(4)(B).

4. Plaintiff Citizens for Responsibility and Ethics in Washington ("CREW") is a non-profit corporation, organized under IRC §501(c)(3). CREW is committed to protecting the right of citizens to be informed about the activities of government officials and to ensuring the integrity of government officials. CREW is dedicated to empowering citizens to have an influential voice in government decisions and in the government decision-making process. To advance its mission, CREW uses a combination of research, litigation, advocacy and public education. As part of its research, CREW uses government records made available to it under the FOIA.

5. CREW has invested considerable organizational resources in pushing the U.S. government to take ethical issues seriously. CREW monitors closely the laws and rules applicable to government agencies.

6. CREW is harmed by the IRS's failure to comply with the FOIA, because that failure harms CREW's ability to provide full, accurate, and current information to the public on a matter

2

of great public interest and urgency.  5 U.S.C. §552(a)(6)(c).  Absent this critical information, CREW cannot advance its mission of educating the public to ensure that the public continues to have a vital voice in government decisions.

7.  CREW will analyze the information it receives that is responsive to its request, and will share it with the public through memoranda, reports, or press releases.  In addition, CREW will disseminate any documents it acquires from its request to the public through its website, www.citizensforethics.org.  Currently, the CREW website contains links to thousands of pages of documents acquired from multiple FOIA requests.  See http://citizensforethics.org/activities/foia.php.  Visitors to CREW's website can peruse the FOIA request letters, the responses from government agencies, and a growing number of documents responding to FOIA requests.  CREW's virtual reading room provides around-the-clock access to anyone willing to learn about the government activities that were the focus of CREW's FOIA requests.  The CREW website also includes documents relating to CREW's FOIA litigation, Internal Revenue Service complaints, and Federal Election Commission complaints.

8.  Defendant IRS is an agency within the meaning of 5 U.S.C. §552(f).  Defendant is the federal agency with possession and control of the requested records and is responsible for fulfilling Plaintiff's FOIA request.

## STATUTORY FRAMEWORK

### The Freedom of Information Act

9.  The FOIA, 5 U.S.C. §552, requires agencies of the federal government to release requested records to the public unless one or more specific statutory exemptions apply.

3

10. An agency must respond to a party making a FOIA request within 20 working days, notifying that party of at least the agency's determination whether or not to fulfill the request, and of the requester's right to appeal the agency's determination to the agency head. 5 U.S.C. §552(a)(6)(A)(i).

11. An agency must respond to a FOIA appeal within 20 working days, notifying the appealing party of the agency's determination to either release the withheld records or uphold the denial. 5 U.S.C. §552(a)(6)(A)(ii); IRS Rev. 04-2006.

12. In "unusual circumstances," an agency may delay its response to a FOIA request or appeal, but must provide notice and must also provide "the date on which a determination is expected to be dispatched." 5 U.S.C. §552(a)(6)(B).

13. This Court has jurisdiction, upon receipt of a complaint, "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. §552(a)(4)(B).

14. The FOIA provides a mechanism for disciplinary action against agency officials who have acted inappropriately in withholding records. Specifically, when requiring the release of improperly withheld records, if the Court makes a written finding that "the circumstances surrounding the withholding raise questions whether agency personnel acted arbitrarily or capriciously," a disciplinary investigation is triggered. 5 U.S.C. §552(a)(4)(F).

## FACTS GIVING RISE TO PLAINTIFF'S CLAIMS FOR RELIEF

15. In 2004 and 2005, the IRS initiated several investigations into IRC §501(c)(3) organizations based, in part, on complaints it received from outside sources. The IRS justified those investigations as necessary to determine whether those organizations had complied with the

prohibition against political campaign intervention that the IRS imposes on by 501(c)(3) organizations. See "Political Activities Compliance Initiative Executive Summary," February 22, 2006 (attached as Exhibit A).

16. In October 2004, the National Association for the Advancement of Colored People (NAACP) announced that the IRS had launched an investigation into the organization's tax-exempt status because of a speech made by its chairman, Julian Bond, during the NAACP's July 2004 annual convention. See Darryl Fears, "IRS Ends 2-Year Probe of NAACP's Tax Status," *The Washington Post*, September 1, 2006 (attached as Exhibit B). Two years later, the IRS ruled that Chairman Bond's remarks did not violate the organization's tax-exempt status. Id.

17. The NAACP learned the basis for the IRS's investigation only after filing four FOIA requests which revealed that complaints about the NAACP were filed with the IRS by Senators Lamar Alexander (R-Tenn.) and Susan Collins (R-Maine), then-Senator Strom Thurmond (R-S.C.), Representatives JoAnn Davis (R-Va.) and Larry Combest (R-Texas), then-Representatives Robert Ehrlich (R-Md) and Joe Scarborough (R-Fla.) and political donor Richard Hug. See Press Release, "IRS Determines NAACP Should Retain Tax Exempt Status," www.naacp.org, August 31, 2006 (attached as Exhibit C).

18. In June 2005, the IRS notified All Saints Episcopal Church in Pasadena, California of its examination into whether a guest church sermon entitled, "If Jesus Debated Senator Kerry and President Bush," addressing the moral and religious implications of social issues facing the country, constituted prohibited political campaign intervention. See Press Release, "IRS Resumes Examination of All Saints Church," September 15, 2006, website: http://www.allsaints-pas.org/all_saints_church.htm (attached as Exhibit D).

5

19. In 2004 or 2005, the IRS investigated the Charles Street African Methodist Episcopal Church because its leader, the Rev. Gregory Groover, introduced Senator John Kerry from the pulpit as "the next president of the United States."   The lawyer representing the church said the complaint was dismissed after the church told the IRS that the introduction was not intended as an endorsement. <u>See</u> Michael Kranish, "IRS Scrutinizing Charities' Political Work," *The Boston Globe*, April 29, 2006 (attached as Exhibit E).

20. On September 18, 2006, Representative Adam Schiff (D-CA) and Rep. Walter Jones (R-NC) called for the IRS to justify its investigation of certain houses of worship, including All Saints Episcopal Church. The two lawmakers requested that the IRS clarify its rules on political intervention because they were unclear as to why statements that express an opinion on an issue of the day are grounds for revocation of a tax exemption. <u>See</u> Press Release, "IRS Actions on Sermons Questioned by Lawmakers," <u>www.schiff.house.gov,</u> September 18, 2006 (attached as Exhibit F).

21. On its website, the IRS states that "politics plays absolutely no role in audits." <u>See</u> IRS, "Charities, Churches and Politics," <u>www.irs.gov</u> (attached as Exhibit G).  Nevertheless, the new approach of the IRS to investigate and enforce the ban on partisan activities by charities and religious organizations through the use of its new project, The Political Activities Compliance Initiative (PACI), has resulted in unresolved audits and questions from lawmakers and organizations about the standards of the IRS and its evenhanded enforcement of the law. <u>See</u> OMB Watch Report, "IRS Political Activity Investigations - Publicly Disclosed Cases," <u>www.ombwatch.org,</u> July 2006 (attached as Exhibit H).

### Plaintiff's FOIA Request and Follow-Up

22.  By letter dated July 27, 2006, pursuant to the Freedom of Information Act, Plaintiff

requested that the IRS produce: any instruction, direction or suggestion for whether and how the

IRS should investigate any 501(c)(3) organization or entity; any and all documents sent to or from

the IRS and any Member of Congress or the staff of any Member of Congress that relate in any

way to the investigation by the IRS of any 501(c)(3) organization; any and all documents that

reflect any general principle or instruction as to how the IRS exercises its investigatory powers.

See Letter from Anne L. Weismann to IRS FOIA Request Disclosure Office 3, July 27, 2006

(attached as Exhibit I).

23.  CREW also requested a waiver of fees associated with processing its request, pursuant

to 5 U.S.C. §552(a)(4)(A)(iii).  Id.  CREW explained that the subject of its request concerns "the

operations of the federal government," "the disclosures will likely contribute to a better

understanding of relevant government procedures by CREW and the general public in a

significant way," and CREW is making the request "primarily and fundamentally for non-

commercial purposes."  Id.  More specifically, CREW explained that the records it was seeking

"are likely to contribute to the public's understanding of the how the IRS exercises its

investigatory function and the individuals and organizations that influence or attempt to influence

the IRS investigatory process."  Id.

24.  By letter dated August 7, 2006, the IRS advised CREW that in response to its July 27,

2006 FOIA request, the IRS was prohibited from making the information requested public without

a written authorization or Power of Attorney pursuant to 5 U.S.C. §552(b)(3) of the Freedom of

Information Act. The IRS cited 26 U.S.C. §6103 as the statute for the (b)(3) exemption. <u>See</u> Letter from Janice P. Rudolph to Anne L. Weismann, August 7, 2006 (attached as Exhibit J).

25. By letter dated August 28, 2006, CREW appealed the IRS's initial determination that the documents CREW requested under FOIA are exempt from disclosure. <u>See</u> Letter from Kimberly D. Perkins to IRS FOIA Appeals Office, August 28, 2006 (attached as Exhibit K). As CREW explained, the documents it requested are not return information, and the statute cited by the IRS, 26 U.S.C. §6103, does not apply to nonprofit organizations organized under IRC 501(c)(3). <u>Id</u>.

26. With the exception of the aforementioned letters of July 27, August 7 and August 28, CREW has received no other response from the IRS regarding CREW's July 27, 2006 FOIA request, or its appeal of August 28, 2006.

27. CREW has now exhausted its administrative remedies with respect to the processing of CREW's FOIA request. <u>See, e.g.</u>, <u>Oglesby v. U.S. Dep't of Army</u>, 920 F.2d 57, 65 (D.C. Cir. 1990).

**PLAINTIFF'S CLAIMS FOR RELIEF**

**CLAIM ONE**

**(Failure to Produce Records)**

28. Plaintiff realleges and incorporates by reference all preceding paragraphs.

29. Plaintiff properly asked for records within the IRS's control.

30. Plaintiff is entitled by law to access to the records requested under the FOIA.

31. Defendant has wrongfully withheld the requested records from CREW.

8

32.  Therefore Defendant violated FOIA's mandate to release agency records to the public by failing to release the records as Plaintiff specifically requested.  5 U.S.C. §§552(a)(3)(A), 552(a)(4)(B).

## CLAIM TWO

### (Failure to Respond)

33.  Plaintiff realleges and incorporates by reference all preceding paragraphs.

34. On August 28, 2006, Plaintiff properly filed an appeal with the IRS and in accordance with the IRS Rev. 04-2006 appeal rights and 5 U.S.C. §552(a)(6)(A)(ii).

35.  To date, Plaintiff has not received a response from the IRS and the IRS has exceeded the 20-working-day time limit for responding to Plaintiff's appeal.

36.  Therefore, the IRS has violated IRS Rev. 04-2006 appeal rights and 5 U.S.C. §552(a)(6)(A)(ii) by failing to respond to Plaintiff's appeal.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

(1) Declare that the IRS has violated the Freedom of Information Act by failing to lawfully satisfy Plaintiff's FOIA request of August 4, 2006;

(2) Order the IRS to respond immediately to Plaintiff's FOIA request and to grant Plaintiff's fee waiver;

(3) Award Plaintiff its reasonable attorney fees and litigation costs in this action, pursuant to 5 U.S.C. §552(a)(4)(E); and

(4) Grant such other and further relief as the Court may deem just and proper.

9

Respectfully submitted,

_____
Anne L. Weismann
(D.C. Bar No. 298190)
Kimberly D. Perkins
(D.C. Bar No. 481460)
Citizens for Responsibility and
  Ethics in Washington
1400 Eye Street, N.W., Suite 450
Washington, D.C.  20005
Phone: (202) 408-5565
Fax: (202) 588-5020

Attorneys for Plaintiff

Dated: October 18, 2006

**EXHIBIT A**

# Political Activities Compliance Initiative
## Executive Summary
### February 22, 2006

**Background**

Two elements define the IRS concern about political intervention and the charitable tax-exempt sector. The first is the law which pointedly prohibits such activity. With the enactment of the Revenue Act of 1954, Congress barred section 501(c)(3) tax-exempt organizations (including churches) from political campaign intervention by adding language to the Internal Revenue Code that disqualifies them from exemption if they "participate in, or intervene in (including the publicizing or distributing of statements), any political campaign on behalf of any candidate for political office." In 1987, Congress amended section 501(c)(3) to clarify that the prohibition on political campaign intervention applies to activities "in opposition to," as well as on behalf of, any candidate for public office.

The second is the dramatic increase in the amount of money financing campaigns. The level of funds going into the campaign area from organizations regulated by the Federal Election Commission has increased significantly. For the 2003-2004 election cycle, the FEC reported that over $10 billion was spent, more than double the $4 billion spent during the 1999-2000 election cycle (the last election cycle that included a presidential election).

Similar dramatic increases were reported in the receipts and expenditures by section 527 political organizations reporting to the IRS. In the last six months of the 2004 election cycle, these organizations, which typically are involved in election-related issue advocacy not regulated under the stricter FEC rules, reported over $300 million in expenditures, more than double the $150 million in expenditures reported in the comparable period in the 2000 cycle.

Although charities are precluded from intervening in political campaigns, the IRS has seen a growth in the number and variety of allegations of such behavior by section 501(c)(3) organizations during election cycles. The increase in allegations, coupled with the dramatic increases in money spent during political campaigns, has raised concerns about whether prohibited funding and activity are emerging in section 501(c)(3) organizations.

If left unaddressed, the potential for charities, including churches, being used as arms of political campaigns and parties will erode the public's confidence in these institutions. Nevertheless, enforcement of the prohibition against political campaign intervention by section 501(c)(3) organizations presents unique challenges for the IRS:

- The activities that give rise to questions of political campaign intervention also raise legitimate concerns regarding freedom of speech and religious expression;
- The Code contains no bright line test for evaluating political intervention; it requires careful balancing of all of the facts and circumstances;

- The questionable activities are public and occur within the compressed period of time of the election cycle. Keeping in mind that there are over one million 501(c)(3) organizations, media reports on the activities of a small representation of those organizations can, rightly or wrongly, create an impression of widespread noncompliance; and
- The activities that must be evaluated for potential campaign intervention can be difficult to document, because they often involve events and statements that may not be recorded or otherwise captured.

If the IRS determines prohibited political intervention has occurred, it faces additional challenges:

- The existing sanctions are limited to assessing penalties based on the amount spent on the intervention, which is often de minimis, or revocation, which may not be in the public interest: and
- The disclosure restrictions of IRC section 6103 limit IRS's ability to discuss its enforcement actions.

Because of strong indications of increasing political activity in the tax exempt area, the IRS augmented its efforts in this area in 2004. The Service adopted a two-part approach. First, the IRS expanded its educational efforts to remind section 501(c)(3) organizations about the prohibition on political activities and the consequences of engaging in such activities. The Service conveyed this message through press releases, speeches, workshops, IRS Nationwide Tax Forums, and in a letter to national political parties. Second, the Service initiated the Political Activities Compliance Initiative to respond in a faster, targeted fashion to specific credible allegations of political campaign intervention.

As part of the initiative a "fast track" process was implemented for evaluating reports and allegations (referrals) of potential prohibited political activity by section 501(c)(3) organizations and for starting examinations, where appropriate. The fast track process enabled the IRS to meet the main objectives of the initiative--to intercede quickly in instances of alleged prohibited political activity, address allegations of noncompliance in a manner that was balanced and even-handed, educate the exempt organizations, and prevent potential future violations of the law by those contacted.

**Processing Referrals and Conducting Examinations**

The cases came to the IRS from many sources. As part of the fast track process, the initiative team developed procedures for expediting the review of these referrals. Each week, a committee of three career employees reviewed referrals and decided whether they merited examination. Each member conducted a thorough technical review of the referral information to determine whether there was a "reasonable belief" that the organization may have engaged in political campaign activity prohibited by section 501(c)(3), when considered

fairly and in light of any other reliable information.  An organization was selected for examination only if at least two members agreed that the referral met the "reasonable belief" criterion.  All decisions were documented.

The IRS reviewed 166 new referrals as part of the initiative.  Sixty-eight of those were selected for examination.  Additionally, 64 organizations were already in process for this issue when the project began.  Thus, 132 organizations were included in the project for examination.  Each case was designated either as non-complex, usually meaning it was a single-issue case that could be handled as a correspondence examination; or more complex, meaning it was a multi-issue case that was to be handled as a field examination.

Fewer than half of the organizations ultimately contacted were churches.  All of the church cases went through the specific procedures of IRC section 7611, which require a church tax inquiry prior to the opening of a church tax examination.  Under this section of the law, the approval of the Director, EO Examinations is required before the initiation of any contact with a church.

The attached full report explains the selection and examination process in detail and describes various obstacles the IRS faced.  As discussed below, the IRS is seeking to remove those obstacles for the coming election cycle.

**Examination Results**

As indicated above, of the original cases, 132 were assigned to the field for examination. Twenty-two of those cases were closed after additional review conducted in preparation for the examinations indicated they did not merit further use of IRS resources. Of the remaining 110 cases, as of the date of this report, 82 examinations have been completed and the cases are closed.

- In three of the 82 cases, the IRS not only substantiated that prohibited political campaign activity occurred, but that the activity warranted, and the Service proposed, revocation of the organization's exempt status.
- In 55 of the cases, the IRS issued written advisories indicating the Service's view that prohibited campaign activity had occurred, but that revocation was not recommended. In one case, the Service assessed excise tax.  A written advisory is issued when the Service believes the organization engaged in prohibited campaign activity, but the activity appeared to be a one-time, isolated violation, and the organization corrected the violation where possible (e.g., recovered the funds spent on the activity), and, in most cases, took affirmative steps to ensure it would not violate the prohibition in the future.  The written advisory states the facts of the case and the applicable law.  It also includes a warning that the organization risks possible revocation of tax-exempt status should it become involved in political activities in the future.

- In 5 cases, the IRS found non-political intervention violations (including delinquent returns).
- In 18 cases, the IRS found that the organization did not engage in prohibited political campaign activity.

Twenty eight cases remain open:

- With respect to two of these cases, the examinations are completed but, as with all initiative cases, the files are being reviewed in Examination's Mandatory Review branch to ensure consistency and correctness.
- Twenty-six cases remain in process.

A one-page statistical summary of the cases is attached.

A review of the files indicates some of the more common types of prohibited political activities alleged and found to date through the course of the examinations. Although taxpayer privacy rights preclude us from discussing specific instances, cases included miscellaneous alleged violations ranging from allowing candidates to put up signs at organization facilities to voter registration drives conducted in a way that favors or opposes certain candidates. Violations alleged and determined include:

- Charities, including churches, distributing diverse printed materials that encouraged their members to vote for a preferred candidate (24 alleged; 9 determined),
- Religious leaders using the pulpit to endorse or oppose a particular candidate (19 alleged; 12 determined),
- Charities, including churches, criticizing or supporting a candidate on their website or through links to another website (15 alleged; 7 determined),
- Charities, including churches, disseminating improper voter guides or candidate ratings (14 alleged; 4 determined),
- Charities, including churches, placing signs on their property that show they support a particular candidate (12 alleged; 9 determined),
- Charities, including churches, giving improperly preferential treatment to certain candidates by permitting them to speak at functions (11 alleged; 9 determined), and
- Charities, including churches, making cash contributions to a candidate's political campaign (7 alleged; 5 determined).

The attached full report provides additional information about the examination results and describes other allegations of prohibited political activities engaged in by section 501(c)(3) organizations.


**Conclusions**

The IRS found that nearly three quarters of the organizations examined under the initiative had engaged in prohibited political activities.  As a result, the Service will continue the initiative for future election periods, and as noted above, will focus on both education and enforcement.

The updated initiative procedures reflect what the IRS learned during the 2004 election cycle and the adoption of certain recommendations made by Treasury Inspector General for Tax Administration (TIGTA).  TIGTA reviewed the 2004 Initiative in response to public complaints questioning whether IRS methods of selecting cases for examination reflected a political bias or a response to political direction.  The TIGTA report concluded that there was no evidence of political bias or direction, but did make several recommendations for improving the process.

Heading into the 2006 election cycle, the Service will:

- Distribute expanded educational material based on findings from the 2004 election cycle and make it widely available early in the coming election cycle,
- Start the project earlier in the election year to ensure consistent and timely referral selections and examinations,
- Publicize the project in advance so there is no surprise to organizations, and
- Augment the dedicated and trained team to assure prompt handling of project cases.

Creating new educational materials is critical for any future success in preventing political intervention by section 501(c)(3) organizations.  Fact Sheet FS 2006-17 dated February 23, 2006, represents the Service's latest effort to educate organizations on the issues found in these cases and provides assistance on how organizations can comply into the future.

Attachment:  Summary of Results, 2004 Political Activity Compliance Initiative

**EXHIBIT B**

1 of 1 DOCUMENT

The Washington Post

September 1, 2006 Friday
Correction Appended
Final Edition

# IRS Ends 2-Year Probe Of NAACP's Tax Status;
# Leader's Criticism of Bush in 2004 Did Not Violate Law, Agency Decides

**BYLINE:** Darryl Fears, Washington Post Staff Writer

**SECTION:** A Section; A03

**LENGTH:** 603 words

Nearly two years after a controversial decision to investigate the NAACP for criticizing President Bush during the 2004 presidential campaign, the Internal Revenue Service has ruled that the remarks did not violate the group's tax-exempt status.

In a letter released yesterday by the NAACP, the IRS said the group, the nation's oldest and largest civil rights organization, "continued to qualify" as tax-exempt.

If the NAACP were stripped of the status, donors would not be allowed to claim contributions to the group on income tax returns.

Federal law requires tax-exempt nonprofit organizations to be politically nonpartisan.

"It was an enormous threat," NAACP Chairman Julian Bond said of the investigation. The opposite outcome, he said, "would have reduced our income remarkably."

Bond reiterated his belief that the investigation was politically motivated. He said the decision, received by the NAACP on Aug. 9, "meant that they thought they had harassed us enough and they could stop."

In a response to lawmakers who expressed outrage over the investigation in 2004, IRS Commissioner Mark W. Everson said the agency's examinations are based on tax law, not partisanship.

The commissioner said the investigation of the NAACP was undertaken because two congressional leaders, whom he declined to name, requested it. They were unhappy because Bond criticized Bush in a speech in July 2004, saying his administration preached racial neutrality and practiced racial division.

"They write a new constitution of Iraq and they ignore the Constitution at home," Bond said.

After filing four freedom-of-information requests, NAACP lawyers discovered that far more than two members of Congress called for an investigation and that all were Republicans.

Republican Sens. Lamar Alexander (Tenn.) and Susan Collins (Maine) called for the investigation.

Others included Rep. Jo Ann S. Davis (R-Va.) and then-Rep. Larry Combest (R-Tex.). Former GOP representatives Joe Scarborough of Florida, who now hosts a talk show, and Robert L. Ehrlich Jr., currently governor of Maryland, also requested a probe.

The investigation started Oct. 8, 2004, a month before the election. As the investigation dragged on into the following February, the NAACP announced that it would not continue to cooperate.

Angela Ciccolo, an NAACP lawyer, noted that although Bond's remarks were made in July 2004, the investigation did not begin until October, just when the NAACP was attempting to register voters. "The timing of the investigation is critical," she said.

When the investigation started, Bush and the NAACP were locked in a long-running feud that started shortly before the president's first election victory in 2000.

During that campaign, the NAACP ran television spots featuring the daughter of James Byrd Jr., a black man who was dragged to death behind a pickup truck in Texas in 1998. She criticized Bush, then governor of Texas, for not signing hate-crime legislation.

The rift grew when the NAACP charged that Republicans in Florida stole the 2000 election by turning black voters away from the polls.

Recently, however, the relationship between the group and Bush has begun to warm. Bush addressed the NAACP convention in July for the first time in his six years in office, avoiding becoming the first president since Warren G. Harding to snub the group for an entire presidency.

"It's disappointing that the IRS took nearly two years to conclude what we knew from the beginning: The NAACP did not violate tax laws and continues to be politically nonpartisan," said its president, Bruce S. Gordon.

**LOAD-DATE:** September 1, 2006

**LANGUAGE:** ENGLISH

**CORRECTION-DATE:** September 12, 2006; September 21, 2006

**CORRECTION:** A Sept. 1 article incorrectly said that the Internal Revenue Service had named the NAACP as a group whose tax-exempt status was being investigated in response to questions from congressmen. Though the NAACP's status was investigated, the IRS did not name the group.

A Sept. 1 article incorrectly listed several Republicans as having called for an Internal Revenue Service investigation into the tax-exempt status of the NAACP. Named were Sens. Lamar Alexander (Tenn.) and Susan Collins (Maine); Rep. Jo Ann S. Davis (Va.); and former representatives Larry Combest (Tex.), Joe Scarborough (Fla.) and Robert L. Ehrlich Jr. (Md.). The lawmakers forwarded complaints and requests for an investigation from constituents to the IRS.

**PUBLICATION-TYPE:** Newspaper

Copyright 2006 The Washington Post

**EXHIBIT C**

# NAACP NEWS

**www.naacp.org**



Bruce S. Gordon
President and Chief Executive Officer

Julian Bond
Chairman, Board of Directors

**IMMEDIATE RELEASE**
Contact: John C. White
     (410) 580-5125

**August 31, 2006**

## IRS DETERMINES NAACP SHOULD RETAIN TAX EXEMPT STATUS
*Investigation concludes Association did not violate tax laws or commit undue political intervention*

The Internal Revenue has informed the National Association for the Advancement of Colored People (NAACP) that it has concluded its examination of NAACP activities and determined the Association did not violate conditions of its tax exempt status.

"We have determined that you continue to qualify as an organization described in IRC section 501©(3)," the IRS wrote in a letter to the NAACP dated Aug. 9. IRS official Marsha A. Ramirez said that a review of video footage of the Bond speech and other information indicated "that political intervention did not occur."

The IRS launched an examination of the NAACP on October 8, 2004 after receiving complaints from several Republican members of Congress who said their constituents believed NAACP National Board of Directors Chairman Julian Bond crossed the line of non-partisanship in a speech at the NAACP 2004 National Convention critical of Bush administration policies.

"It's disappointing that the IRS took nearly two years to conclude what we knew from the beginning: the NAACP did not violate tax laws and continues to be politically non-partisan," said NAACP President and CEO Bruce S. Gordon. "Tax-exempt organizations should feel free to critique and challenge governmental policies under the First Amendment without fear of IRS intervention."

"The good news is that we are vindicated," said Bond. "The bad news for us and other freedom loving Americans is that it was initiated for partisan purposes to threaten our right to free speech. We'll continue to speak truth to power."

The IRS initiated an audit of the NAACP just one month before the 2004 presidential election and nearly three months before the end of the NAACP's tax year. The IRS refused to explain the basis of its investigation for more than a year. The NAACP learned the basis for the examination only after filing four Freedom of Information ACT requests (FOIA).

The documents included complaints filed by Senators Lamar Alexander (R-Tenn.) and Susan Collins (R-Maine), then-Senator Strom Thurmond (R-S.C.), Representatives JoAnn Davis (R-Va.) and Larry Combest (R-Texas), then-Representatives Robert Ehrlich (R-Md.) and Joe Scarborough (R-Fla.) and political donor Richard Hug. In the interest of ensuring transparency, integrity and fairness in the administration of the tax law, the NAACP will release copies of all the documents provided thus far by request.

Founded in 1909, the NAACP is the nation's oldest and largest civil rights organization. Its members throughout the United States and the world are the premier advocates for civil rights in their communities, conducting voter mobilization and monitoring equal opportunity in the public and private sectors.

###

**4805 Mt. Hope Drive**        **Baltimore, MD 21215**

**EXHIBIT D**



**ALL SAINTS CHURCH**

**PRESS RELEASE**

**FOR IMMEDIATE RELEASE:**

SEPTEMBER 15, 2006

## IRS Resumes Examination of All Saints Church

The Internal Revenue Service summoned All Saints Church of Pasadena and its rector, the Rev. Ed Bacon, on Friday to appear before an officer of the IRS, renewing its examination of All Saints Church after ten months of silence. On July 24, the agency unexpectedly sent the Pasadena church a list of 13 questions that probed deeply into its core religious practices. All Saints responded by raising both substantive and procedural concerns, and requested that the Agency clarify the intentions of the examination, because of its wide-ranging First Amendment implications. Because of All Saints' concerns regarding both the substantive nature and the procedural defects of this examination, it asked the IRS to reconsider its questions and reissue the Information Document Request in the form of an Administrative Summons, which was delivered Friday morning. It listed 17 detailed requirements for information, documents and testimony regarding All Saints' relationship with the Rev. George Regas, the guest preacher who delivered the sermon in question, and all expenditures involved in having the sermon given on Sunday, October 31, 2004. Though the IRS tailored its inquiry, now recast as an administration summons, it still delves into a constitutionally protected area: the language and practices of All Saints' worship service.

The summons also probes into the church's practices regarding its selection process for guest preachers, and what if any instructions or guidelines are given to guest preachers by the church, clearly an intrusion into the church's free exercise of religion. These latest inquiries underscore the church's concerns about IRS compliance with the procedural safeguards set forth in the Internal Revenue Code to protect churches from unnecessary and intrusive audits.

The timing of the renewed investigation also raises concerns that it may reflect an attempt to chill the Church's discussions of fundamental religious issues with policy implications before the mid-term elections, and in a way that intrudes into core religious practice.

The Rev. Bacon said, "We were quite surprised to receive this latest notice from the IRS after nearly a year without any communication from them. Despite the drain on our finances and the time we will spend defending this attack on the freedoms of religion and speech, All Saints Church will continue without interruption or fear what has distinguished its mission for 125 years. We will persist in both teaching our core principles and expressing them in our actions. Our religious tradition criticizes those public policies which cause detriment to the least of these, stopping short of supporting or opposing candidates. This is required by the beliefs at the heart of our faith, which are thus constitutionally protected. The language and practices of our worship services are also protected by the constitution. The sermon in question expressed without partisanship our values of peacemaking and of working for healing, human rights, and justice in solidarity with the poor, vulnerable and marginalized in our society. These values cannot and will not be abandoned solely because there is an election cycle."

Issuance of the summons forces the IRS to address the church's concerns at a higher level within the agency; moreover, enforcement of the summons will require both the consent and participation of the Department of Justice, steps that will further protect All Saints' First Amendment rights. The summons also gives All Saints the option to challenge the examination in court.

Marcus S. Owens, lead counsel for All Saints Church, said, "These substantive and procedural problems are crucial in the All Saints case because of the sweeping First Amendment implications of the government's examination. The recent unilateral reversal of the IRS position in the NAACP case raises a serious question as to whether the IRS has any legal basis for continuing its review of All Saints. In the interest of freedom of speech and freedom of religion, it is imperative that the IRS complies with the Congressionally-mandated protections for religious institutions. We simply cannot accept any less in this case."

The Rev. Bacon said, "We still have grave concerns about how this investigation was initiated in the first place. All Saints leadership, with input from the congregation and our community, is prayerfully considering whether the church will comply with this summons or instead raise its concerns through the judicial process."

The IRS originally notified All Saints Church of its examination on June 9, 2005, raising questions about a guest sermon delivered by the Rev. George Regas. The guest sermon, entitled "If Jesus Debated Senator Kerry and President Bush," addressed the moral and religious implications of various social issues facing the country. The IRS has alleged that this sermon constituted prohibited political campaign intervention.

FOR MORE INFORMATION:
For information and copies of all correspondence relating to the IRS examination, and to schedule interviews with All Saints clergy, please contact Keith Holeman, All Saints' Director of Communications, at 626.583.2739 or kholeman@allsaints-pas.org.

**EXHIBIT E**

1 of 2 DOCUMENTS

The Boston Globe

April 29, 2006 Saturday
THIRD EDITION

# IRS SCRUTINIZING CHARITIES' POLITICAL WORK

**BYLINE:** BY MICHAEL KRANISH, GLOBE STAFF

**SECTION:** NATIONAL/FOREIGN; Pg. A1

**LENGTH:** 1541 words

WASHINGTON An increasing number of churches and other charities are violating laws prohibiting involvement in political campaigns, prompting increased enforcement by the Internal Revenue Service and calls for a further crackdown.

An IRS review completed in February looked at 82 complaints about charities and found that three-quarters of the groups, nearly half of them churches, had violated laws against political activities.

Mark Everson, the IRS commissioner, said in an interview with the Globe that despite the laws, charities receive less scrutiny than political committees, and are becoming increasingly attractive to those who want to use them for political activity.

"I'm very concerned about continued inappropriate activity this [election] cycle," Everson said. "Every indication I get is that this will be a problem and probably more of a problem. . . . My worry is that clever attorneys are seeing that this is a much less regulated area and they are willfully skewering some activities in to the nonprofits and to some degree the churches as well."

While the IRS has increased the number of agents who investigate charity abuse, some critics say the IRS is barely scratching the surface of the problem. For example, the IRS has no systematic method of auditing churches, which are not required to file tax returns and are rarely audited unless a complaint is lodged against them.

In its recent study, the IRS found that churches were violating the law by either urging people to vote for a particular candidate, endorsing a candidate, or donating money to a candidate.

During the 2004 presidential campaign, the Republican Party requested that it be sent church membership directories, with a GOP official writing that "access to these directories is critical" to identifying those "likely to be supportive of President Bush's compassionate conservative agenda."

Republicans acknowledged receiving many copies of church directories, though they were sometimes sent by church members, not the church leadership. The IRS has not said whether it has taken any action regarding the use of church-membership lists in campaigns.

Some analysts have attributed Democratic presidential nominee John F. Kerry's pivotal loss in Ohio to an effort by churches to urge parishioners to vote for a measure banning same-sex marriage, which drew more voters to the polls who favored the president.

The IRS policy on charities says: "Charities may not engage in political campaign activities." The policy added that charities "cannot endorse any candidates, make donations to their campaigns, engage in fund-raising, distribute statements, or become involved in any other activities that may be beneficial or detrimental to any candidate. Even activities that encourage people to vote for or against a particular candidate on the basis of nonpartisan criteria violate the political campaign prohibition."

But the IRS has said charities are allowed to distribute unbiased voters guides, and to express opinions on issues.

Everson said he has assigned agents to look into all complaints about churches or charities engaging in political activity. He acknowledged that there had not been "nearly enough focus on misconduct by charities in general, let alone looking at the political intervention."

But now that the IRS is cracking down, some observers say enforcement is politically motivated.

Marcus Owens, the former head of tax-exempt division of the IRS, said he believes the agency is cracking down on groups that help Democrats, and he questioned whether it is also going after those that benefit Republicans.

Owens represents two organizations that have acknowledged being audited by the IRS for political activity: the NAACP and a California church.

The NAACP said the IRS is investigating the civil rights organization because its chairman, Julian Bond, condemned the president's policies on Iraq, education, and the economy. Bond has maintained that he did not violate the prohibition on political activity, saying in a statement that "We've criticized, condemned and/or praised every president since Theodore Roosevelt and we'll continue to speak truth to power."

Similarly, the All Saints Episcopal Church of Pasadena, Calif., has said it is being audited because its former rector, the Rev. George F. Regas, gave a sermon in October 2004 titled "If Jesus debated Senator Kerry and President Bush." Regas said during that sermon, "Mr. President, your doctrine of preemptive war is a failed doctrine."

The IRS sent a letter to the church that announced an investigation on grounds that "a reasonable belief exists that you may not be tax-exempt as a church" because of political statements. The letter was first reported by the Los Angeles Times.

The IRS declined to comment on both cases, which are pending.

Owens questioned whether the IRS is being as aggressive in going after churches or other charities that helped Bush. "Certainly the Republican Party was very aggressive in using charities to marshal voters in the last election," Owens said.

Everson responded that an investigation by the inspector general at the Treasury Department concluded last year that the IRS's audits were not politically motivated.

Individual investigations are shrouded in secrecy. Citing privacy rules, the IRS has declined to provide the names of charities that were accused of violating the political prohibition.

Many cases were resolved in negotiation with the IRS, without either side divulging any penalties. Only in the rarest cases did the IRS announce that it had revoked a group's charitable status and then refused to say if it was for political activity.

Sometimes, however, complaints come out in the media. At least one investigation took place in Boston, after reports that Rev. Gregory Groover of Charles Street African Methodist Episcopal Church introduced Kerry from the pulpit as the "next president of the United States." A church lawyer said the complaint was dismissed after the Roxbury church told the IRS that the introduction wasn't intended as an endorsement.

The lawyer, Frederick E. Dashiell, said it was "a bit intimidating" to be investigated for what he called "an inadvertent statement."

The Rev. Barry Lynn, executive director of Americans United for Separation of Church and State, which filed some of the complaints, said church political activity has grown significantly. During the 1990s, he said, religious political activitism was centered on the Christian Coalition, which has since run into financial difficulties. Large local churches and their activist pastors have taken up the slack.

A group of religious leaders recently announced that they were filing a complaint about two Ohio churches that they say are improperly engaging in political activity on behalf of Republicans. The complaint has received national attention because it targets some of the church leaders who have been credited with boosting voter turnout for Bush in 2004.

The complaint said the church leaders have turned their attention to helping a Republican candidate for governor. The complaint notes that if a church invites a candidate to meet with the congregation, the IRS requires that all candidates be invited. The complaint said a charity tied to the Fairfield Christian Church of Ohio did not invite a Democratic candidate for

governor to an event because he opposed a ban on same-sex marriage. By contrast, the charity has repeatedly hosted a Republican candidate, Kenneth Blackwell, who supports the ban on same-sex marriage.

The Rev. Eric Williams of North Congregational United Church of Christ in Columbus, a Democrat who filed the complaint, said Fairfield is "acting as a campaign organization."

But Russell Johnson, the Republican pastor of Fairfield Christian Church and the chairman of an affiliated charity called the Ohio Restoration Project, said he gave Blackwell an award for courageous leadership.

"If we were having a meet-the-candidate forum, we by law would have to invite everybody there," Johnson said.

The Democratic candidate who was not included, Representative Ted Strickland, said in a telephone interview that Johnson must be "fully aware that what he is doing is intentionally designed to promote the political ambitions of Ken Blackwell."

Johnson said that he is being targeted by "the religious left," which he said is trying "to intimidate conservative believers." He said the work done by "patriot pastors" such as himself focused attention on the issues same-sex marriage and abortion and in the process "undoubtedly helped to elect the president."

He said his current mission is to register 300,000 voters. He said he is staying within IRS guidelines by not endorsing a candidate from the pulpit.

Johnson's defense indicates how difficult it can be for IRS officials to pursue an investigation.

"The churches are particularly sensitive and we tread very carefully there," Everson said. "No one here is talking about trying to limit either free speech or religious liberty. But the Supreme Court has held that just because you have religious liberty and free speech, you don't have an automatic or constitutional right to a tax exemption, and that's where the line has been drawn."

Michael Kranish can be reached at kranish@globe.com.

**LOAD-DATE:** May 1, 2006

**LANGUAGE:** ENGLISH

**GRAPHIC:** PHOTO

**PUBLICATION-TYPE:** Newspaper

Copyright 2006 Globe Newspaper Company

**EXHIBIT F**

Case 1:06-cv-01811-RCL    Document 1-2    Filed 10/19/2006    Page 20 of 39

# CONGRESSMAN
# ADAM SCHIFF
## REPRESENTING CALIFORNIA'S 29TH DISTRICT

HOME ▪ EMAIL THIS PAGE ▪ SITE SEARCH ▪ SITE MAP

Home > Newsroom > Press Releases > 2006



Monday, September 18, 2006                    Contact: Sean Oblack (202) 225-4176

## IRS Actions on Sermons Questioned by Lawmakers

*Schiff, Jones Question Investigation of All Saints and Other Houses of Worship*

Washington, D.C. – Seeking to protect the free speech rights of clergy to speak on important matters of the day, Rep. Adam Schiff (D-CA) and Rep. Walter B. Jones (R-NC) called for the Internal Revenue Service (IRS) to justify its investigation of certain houses of worship throughout the country.

Late last year, the IRS's Political Activity Compliance Initiative (PACI) launched an examination of All Saints Episcopal Church of Pasadena, questioning whether a sermon given days before the November 2004 election was in violation of the church's tax-exempt status. The sermon delivered by former rector Rev. George F. Regas was framed as a debate between Jesus and both presidential candidates, and it focused solely on matters of public policy.

Just last week, the IRS escalated its investigation of All Saints calling on the church to turn over potentially voluminous records or risk losing its tax-exempt status.

The two lawmakers called on the IRS to "clarify its rules on political intervention so that tax-exempt organizations know what is and is not allowed," in a letter today to Treasury Secretary Henry Paulson and IRS Commissioner Mark Everson. "We are unclear as to why statements that solely take an opinion on issues of the day are grounds for revocation of a tax exemption."

The letter also cites an "OMB Watch" report disputing the claims of a February 2006 IRS report in which the IRS lauds its own efforts of rooting out noncompliance of tax-exempt laws.

The text of the letter is below.

September 18, 2006

The Honorable Henry Paulson

Secretary of the Treasury
1500 Pennsylvania Avenue, NW
Washington, DC 20220

Commissioner Mark Everson
Commissioner of the Internal Revenue Service
U.S. Department of Treasury
1111 Constitution Avenue, NW
Washington, DC 20224

Dear Secretary Paulson and Commissioner Everson:

We are concerned about the impact that the Internal Revenue Service's (IRS) Political Activity Compliance Initiative (PACI) has on tax-exempt organizations' First Amendment right to address matters of public policy.  This issue has been of great concern to us over the last year following reports of IRS investigations into the political speech of not-for-profit organizations during the 2004 election cycle.

In one prominent case, in late October, two days before the 2004 election, a reverend delivered a sermon at the All Saints Episcopal Church in Pasadena, California on such public issues as the Iraq war, poverty and abortion.  Following that sermon, the IRS contacted the church stating that the speech may have jeopardized its tax-exempt status.

Unfortunately, this example is far from unique and similar investigations of tax-exempt organizations with varied positions on matters of public policy have been conducted.  Criticism of the Administration's civil rights agenda landed the National Association for the Advancement of Colored People (NAACP) an IRS investigation.  Likewise, an investigation of the First Baptist Church of Springdale was initiated following a Fourth of July sermon given by the Church's pastor that noted his support for the Administration's positions on marriage and abortion.

Despite the release of additional IRS guidance on political intervention, we are unclear as to why statements that solely take an opinion on issues of the day are grounds for revocation of a tax exemption.  The "facts and circumstances" test that is used to determine if a violation has occurred is far too vague to ensure that not-for-profits understand their limitations on speech.  Consequently, we have serious concerns that the PACI program could infringe upon the right to free speech for tax-exempt organizations.  For this reason, we request the IRS to clarify its rules on political intervention so that tax-exempt organizations know what is and is not allowed.

In February 2006, the IRS released a report about the success of its political intervention program, lauding it for its fairness and impartiality.  The report noted that nearly three-quarters of the completed examinations have concluded that the tax-exempt organizations engaged in some level of prohibited political activity.  The report also referenced the Treasury Inspector General for Tax Administration finding of no political bias in the selection of cases for examination.

However, earlier this month, an advocacy group, OMB Watch, released its own report that found that the earlier IRS report exaggerated the extent of noncompliance.  The OMB Watch report showed that the IRS claims of violation were based only on cases not dismissed after two rounds of investigations and that no violation was found in nearly two-thirds – 64 percent – of all completed investigations.  We request that you address the disparities in these two reports.

The actions of the IRS in this matter will have a potentially chilling impact on protected First Amendment rights.  Your responsiveness to this letter will be critical in determining whether further congressional action is warranted.  We look forward to your prompt response.

Sincerely,

ADAM B. SCHIFF
Member of Congress

WALTER JONES
Member of Congress

-30-

**EXHIBIT G**



# Charities, Churches and Politics

The ban on political campaign activity by charities and churches was created by Congress 52 years ago. The Internal Revenue Service administers the tax laws written by Congress and has enforcement authority over tax-exempt organizations. Here is some background information on the political campaign activity ban and the latest IRS enforcement statistics regarding its adminstration of this congressional ban.

In 1954, Congress approved an amendment by Sen. Lyndon Johnson to prohibit 501(c)(3) organizations, which includes charities and churches, from engaging in any political campaign activity. To the extent Congress has revisited the ban over the years, it has in fact strengthened the ban. The most recent change came in 1987 when Congress amended the language to clarify that the prohibition also applies to statements opposing candidates.

Currently, the law prohibits political campaign activity by charities and churches by defining a 501(c)(3) organization as one **"which does not participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of (or in opposition to) any candidate for public office."**

The IRS has published Fact Sheet 2006-17, which outlines how churches, and all 501(c)(3) organizations, can stay within the law regarding the ban on political activity. Also, the ban by Congress is on political campaign activity regarding a candidate; churches and other 501(c) (3) organizations can engage in a limited amount of lobbying (including ballot measures) and advocate for or against issues that are in the political arena. The IRS also has provided guidance regarding the difference between advocating for a candidate and advocating for legislation. See political and lobbying activities.

Earlier this year, the IRS released the results of its Political Activity Compliance Initiative (PACI) which investigated allegations of political campaign activity by 501(c)(3) organizations during the 2004 campaign season. **Out of 87 completed audits involving churches and charities from the 2004 election cycle, political intervention was substantiated in 71 percent of the cases. No political intervention was found in 23 percent of the cases, resulting in a "no change" finding.**

Politics plays absolutely no role in audits. A team of career IRS employees review complaints submitted by the public and determine which allegations merit further review. An independent review confirmed that political considerations played no role in IRS decisions to further investigate allegations of political campaign activity. You can read the report here.

Each election cycle, the IRS reminds 501(c)(3) exempt organizations to be aware of the ban on political campaign activity. The IRS published its most recent reminder in a public news release which you can read here.

The division within the IRS responsible for overseeing churches and charities is the Tax Exempt and Government Entitities Division. TEGE has created a Web page entitled Charities, Churches, and Educational Organizations - Political Campaign Intervention. It is dedicated to the IRS most recent activities related to 501(c)(3) and political activity.

A definitive court case on the issue of free speech and political expression is Branch Ministries Inc. versus Rossotti. In that case, the court upheld the constitutionality of the ban on political activity. The court rejected the plaintiff church's allegations that it was being selectively prosecuted because of its conservative views and that its First Amendment right to free speech was being infringed.

The court wrote: "The government has a compelling interest in maintaining the integrity of the tax system and in not subsidizing partisan political activity, and Section 501(c)(3) is the least restrictive means of accomplishing that purpose."

**EXHIBIT H**

**OMB Watch**
Home : Publications : Latest Reports :

Published on 07/05/2006
http://www.ombwatch.org/article/articleview/3496/1/432

# IRS Political Activities Enforcement Program for Nonprofit Groups: Questions & Concerns

## Executive Summary

The Internal Revenue Service's (IRS) new approach to enforcing the ban on partisan activities by charities and religious organizations has raised serious questions about the agency's interpretation of the law, about evenhanded enforcement, and about the appropriateness of an approach aimed at deterring speech. The Political Activities Compliance Initiative (PACI), has resulted in unresolved audits and lingering questions about the standards used.

This report summarizes the new program, new compliance guidance from the IRS and raises issues and questions that must be addressed to ensure charities and religious organizations can continue to play their essential role in public policy debates.

There are two supplements to the report: one detailing the agency's 2004 enforcement program, and one describing known cases that are currently or have been under investigation.

### Questions and Issues About the IRS Political Activities Compliance Initiative

*Vagueness of the Facts and Circumstances Test and the Reasonable Belief Standard*

Charities, educational institutions, and religious organizations are among tax-exempt organizations described in Section 501(c)(3) of the Internal Revenue Code. They are prohibited from participating or intervening in any political campaign on behalf of, or in opposition to, any candidate for public office. But tax law lacks clear rules defining prohibited intervention in elections, instead considering the "facts and circumstances" of each case.

*Is the Political Activities Compliance Initiative a Solution in Search of a Problem?*

The answer is far from clear. IRS statements exaggerate the level of noncompliance by charities and religious organizations. The IRS claimed 74 percent of cases investigated involved violations, a figure based only on cases that were not dismissed after two rounds of investigation. A closer look at the IRS data reveals a very different picture. In all, no violation was found in 64 percent of all completed investigations.

*Is the IRS Program Effective Enforcement or an Unconstitutional Infringement on Speech?*

Several factors, when taken as a whole, raise constitutional concerns around the PACI program:
- the vagueness of the "facts and circumstances" test
- secrecy regarding enforcement action

Case 1:06-cv-01818-RCL   Document 12   Filed 10/19/2006   Page 38 of 39

- IRS statements regarding its intent to prevent repeat violations before an election
- the threat that an organization's tax-exempt status will be revoked
- lack of deadlines for closing cases

*Uneven Enforcement and Harassment Issues*

A lack of transparency creates confusion and uncertainty about the enforcement process. Section 6103 of the tax code protects the privacy of individual charities and religious organizations. It also has prevented the IRS from adequately informing the public of the agency's interpretation of the law. Absent a bright line test, the most useful information for avoiding noncompliance comes from details of specific cases. So far what has come to light raises concern about unevenness in how the IRS treats similar fact situations.

Also, publicity around the PACI program could lead to a flood of retaliatory and harassment complaints in the 2006 election year, unless the IRS develops standards to screen out such abuses of its procedures.

*Sanctions: Should the Law be Changed?*

IRS staff has recommended changes in the law that would provide them with more enforcement options. But what sort of legislative modifications are anticipated? No specific proposals have been made public. Congress could devise a bright line test, add intermediate sanctions, such as advisory letters, to the IRS enforcement tool box, or both.

**Conclusion and Recommendations**

The IRS's new approach to enforcement could hamper nonpartisan issue advocacy and voter education and mobilization efforts. Our concerns derive mainly from the lack of a bright line rule defining what is partisan and what is not, coupled with "fast track" procedures.

Our review of the program has led us to conclude that:

- The IRS should make clear that a charity's right to criticize elected officials is not suspended because an election is taking place.

- There is not widespread violation of the ban on intervention in elections.

- Concrete guidance, bright line rules defining partisan intervention, and/or safe harbors should be considered so that charities can know what is and is not allowed.

- The IRS must ensure that charities and religious organizations and IRS agents have clear, specific guidance to promote evenhanded enforcement. It should develop complaint standards and investigate how other agencies deal with harassment situations.

- Nonprofits should consider what types of changes in the process, including sanctions, are best for the sector and be ready to respond if Congress acts.

We hope the nonprofit sector and government officials, including the IRS and Congress, will engage in a thoughtful discussion of ways to overcome these challenges and take action accordingly.

**EXHIBIT I**

# CREW | citizens for responsibility and ethics in washington

July 27, 2006

IRS FOIA Request
Disclosure Office 3
Room 1210
31 Hopkins Plaza
Baltimore, MD 21201

**Re: FOIA Request**

Dear Sir/Madam:

Citizens for Responsibility and Ethics in Washington ("CREW") makes this request for records, regardless of format, medium, or physical characteristics, and including electronic records and information, audiotapes, videotapes and photographs, pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. §552, et seq.

Specifically, CREW seeks any and all documents sent to or from the Internal Revenue Service ("IRS") and any individual employed by or entity within the White House that relate in any way to the investigation by the IRS of any entity organized under section 501(c)(3) of the Internal Revenue Code ("501(c)(3) organizations"), including, but not limited to, churches and other religious organizations. CREW's request includes, but is not limited to, any documents that reflect any instruction, direction, or suggestion for whether and how the IRS should investigate any 501(c)(3) organization or entity. CREW also seeks any and all documents sent to or from the Internal Revenue Service ("IRS") and any Member of Congress or the staff of any Member of Congress that relate in any way to the investigation by the IRS of any 501(c)(3) organization including, but not limited to, churches and other religious organizations. CREW's request includes, but is not limited to, any documents that reflect any instruction, direction, or suggestion for whether and how the IRS should investigate any 501(c)(3) organization or entity. Finally CREW seeks any and all documents that reflect any general principle or instruction as to how the IRS exercises its investigatory powers.

Please search responsive records regardless of format, medium, or physical characteristics. We seek records of any kind, including electronic records, audiotapes, videotapes, and photographs. Our request includes any telephone messages, voice mail messages, daily agenda and calendars, information about scheduled meetings and/or discussions, whether in-person or over the telephone, agendas for those meetings and/or discussions, participants included in those meetings and/or discussions, minutes of any such meetings and/or discussions, the topics discussed at those meetings and/or discussions, e-mail regarding meetings and/or discussions, e-mail or facsimiles sent as a result of those meetings and/or discussions, and



transcripts or notes of any such meetings and/or discussions.

If it is your position that any portion of the requested records is exempt from disclosure, CREW requests that you provide it with an index of those documents as required under <u>Vaughn v. Rosen</u>, 484 F.2d 820 (D.C. Cir. 1973), <u>cert</u>. <u>denied</u>, 415 U.S. 977 (1972). As you are aware, a <u>Vaughn</u> index must describe each document claimed as exempt with sufficient specificity "to permit a reasoned judgment as to whether the material is actually exempt under FOIA." <u>Founding Church of Scientology v. Bell</u>, 603 F.2d 945, 949 (D.C. Cir. 1979). Moreover, the <u>Vaughn</u> index must "describe each document or portion thereof withheld, and for **each** withholding it must discuss the consequences of supplying the sought-after information." <u>King v. U.S. Dep't of Justice</u>, 830 F.2d 210, 223-24 (D.C. Cir. 1987) (emphasis added). Further, "the withholding agency must supply 'a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply.'" <u>Id</u>. at 224 (citing Mead <u>Data Central v. U.S. Dep't of the Air Force</u>, 566 F.2d 242, 251 (D.C. Cir. 1977).

In the event that some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable non-exempt portions of the requested records. <u>See</u> 5 U.S.C. §552(b). If it is your position that a document contains non-exempt segments, but that those non-exempt segments are so dispersed throughout the document as to make segregation impossible, please state what portion of the document is non-exempt, and how the material is dispersed throughout the document. <u>Mead Data Central</u>, 566 F.2d at 261. Claims of nonsegregability must be made with the same degree of detail as required for claims of exemptions in a <u>Vaughn</u> index. If a request is denied in whole, please state specifically that it is not reasonable to segregate portions of the record for release.

### Fee Waiver Request

In accordance with 5 U.S.C. §552(a)(4)(A)(iii), CREW requests a waiver of fees associated with processing this request for records. The subject of this request concerns the operations of the federal government and the disclosures will likely contribute to a better understanding of relevant government procedures by CREW and the general public in a significant way. Moreover, the request is primarily and fundamentally for non-commercial purposes. 5 U.S.C. §552(a)(4)(A)(iii). <u>See</u>, <u>e.g.</u>, <u>McClellan Ecological v. Carlucci</u>, 835 F.2d 1282, 1285 (9th Cir. 1987). Specifically, these records are likely to contribute to the public's understanding of how the IRS exercises its investigatory function and the individuals and organizations that influence or attempt to influence the IRS investigatory process.

CREW is a non-profit corporation, organized under section 501(c)(3) of the Internal Revenue code. CREW is committed to the protection of the citizen's right to be aware of the activities of government officials and to ensuring the integrity of those officials. CREW is dedicated to empowering citizens to have an influential voice in government decisions and in the government decision-making process. CREW uses a combination of research, litigation, and

advocacy to advance its mission. The release of information garnered through this request is not in CREW's financial interest. CREW will analyze the information responsive to this request, and will likely share its analysis with the public, either through memorandums, reports or press releases. In addition, CREW will disseminate any documents it acquires from this request to the public. A review of its website, www.citizensforethics.org, demonstrates that CREW has an established history of acquiring documents through the FOIA and publishing them on its website for public use. For example, CREW's website currently includes documents CREW acquired through a FOIA request of the State Department relating to the response to offers of foreign assistance after hurricane Katrina.

Under these circumstances, CREW fully satisfied the criteria for a fee waiver.

## Conclusion

Please respond to this request in writing within twenty (20) working days as required under 5 U.S.C. §552(a)(6)(A)(I). If all of the requested documents are not available within that time period, CREW requests that you provide it with all requested documents or portions of documents which are available within that time period.

If you have any questions about this request or foresee any problems in releasing fully the requested records within the twenty-day period, please call Anne Weismann at (202) 408-5565. Also, if CREW's request for a fee waiver is not granted in full, please contact our office immediately upon making such determination. Please send the requested documents to Anne Weismann, Citizens for Responsibility and Ethics in Washington, 1400 Eye Street, N.W., Suite 450, Washington, D.C. 20005.

Sincerely,

ANNE L. WEISMANN
Chief Counsel

3

**EXHIBIT J**



**DEPARTMENT OF THE TREASURY**
INTERNAL REVENUE SERVICE
WASHINGTON, D.C. 20224

SMALL BUSINESS/SELF-EMPLOYED DIVISION

August 7, 2006

Anne L. Weismann
CREW
1400 Eye Street, N.W., Suite 450
Washington, DC 20005

Re: Control Number 03-2006-01429

Dear Ms. Weismann:

This is in response to your July 27, 2006, Freedom of Information Act (FOIA) request received in our office July 31, 2006, seeking any and all documents sent to or from the Internal Revenue Service ("IRS") and any individual employed by or entity within the White House that relate in any way to the investigation by the IRS of any entity organized under section 501(c) (3) of the Internal Revenue Code ("501(c)(3) organizations"), including, but not limited to, churches and other religious organizations.

To the extent the requested information exist, we are prohibited by law from making such information public without a written authorization or Power of Attorney pursuant to 5 USC 552(b)(3) of the Freedom of Information Act. The statute for the (b)(3) exemption is 26 USC 6103.

Records concerning the processing, assessment, examination, collection and investigation of tax accounts are maintained in the Area Office in which such action took place.

We are closing your request as imperfect. If you believe you have a valid basis for obtaining another taxpayer's records, you should resubmit your request along with the proper authorization, a complete explanation, supporting documents and evidence of your identity to the appropriate Area Office [See www.irs.gov for addresses].

Ms. Weismann
Page 2


We are enclosing Notice 393, which describes the exemption and provides information concerning your appeal rights.

If you have any questions, please reference the case number indicated above and contact me. Due to the flooding at the Main IRS Building, I have been relocated to a temporary work site and you may address your correspondence to: Internal Revenue Service, Governmental Liaison & Disclosure, Attn: Janice Rudolph, Disclosure Office 3 – FOIA, 5000 Ellin Road, NCFB–C9-110, Lanham, MD 20706, or call me at (202)622-3108 and leave a voicemail message as I do not have a temporary desk phone.

Sincerely,

Janice P. Rudolph
Tax Law Specialist
Disclosure Office 3 - FOIA
Badge No. 50-06294


Enclosure
Notice 393

## Information on an IRS Determination to Withhold Records Exempt From The Freedom of Information Act – 5 U.S.C. 552

### Appeal Rights

You may file an appeal with the Internal Revenue Service (IRS) within 35 days after we (1) deny you access to a record in whole or in part; (2) have made an adverse determination as to your category as a requester; (3) deny your request for a fee waiver or reduction; or (4) have advised you that no records responsive to your request exist. You may file an appeal within 10 days when a request for expedited processing has been denied.

Your appeal <u>must</u> be in writing, must be signed by you, and must contain:

>
> Your name and address,
> Description of the requested records,
> Date of the request (and a copy, if possible),
> Identity of the office and contact on the response letter, and
> Date of the letter denying the request (and a copy, if possible)

Mail your appeal to:

> IRS Appeals
> Attention: FOIA Appeals
> 5045 E. Butler Ave.
> M/Stop 55201
> Fresno, California 93727-5136

### Judicial Review

If we deny your appeal, or do not address an issue raised in your appeal within 20 days (excluding Saturdays, Sundays, or legal public holidays) after the date we receive your appeal, you may file a complaint in United States District Court in the district in which (1) you reside; (2) your principal place of business is located; (3) the records are located; or (4) the District of Columbia. A complaint may be filed within 10 days (excluding Saturdays, Sundays, or legal public holidays) after the date we receive your appeal if your appeal is from an adverse determination of a request for expedited processing. If you choose to file suit before receipt of a final determination by the Appeals office, the administrative appeals process may cease.

The rule for effecting service of judicial process upon the Internal Revenue Service is set forth in Federal Rule of Civil Procedure 4(i). In addition to service upon the United States, as set forth in Rule 4(i)(1), service must be made upon the Internal Revenue Service by registered or certified mail as set forth in Rule 4(i)(2)(A). The address of the Internal Revenue Service is: Internal Revenue Service, Attention CC:PA ,1111 Constitution Avenue, N.W., Washington, D.C. 20224.

### Exemptions

The Freedom of Information Act, 5 U.S.C. 552, does not apply to matters that are:

(b)(1) • specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and are in fact properly classified under such executive order.

(b)(2) • related solely to the internal personnel rules and practices of an agency;

(b)(3) • specifically exempted from disclosure by statute (other than section 552b of this title), provided that the statute

---

Notice **393** (Rev. 04-2006) Cat. No. 45803X   Department of the Treasury – **Internal Revenue Service**

**EXHIBIT K**

# CREW | citizens for responsibility and ethics in washington

August 28, 2006

IRS Appeals
Attention: FOIA Appeals
5045 E. Butler Avenue
M/Stop 55201
Fresno, CA 93727-5136

Re:    Freedom of Information Act Request Control Number 03-2006-01429

Dear Sir/Madame:

By letter dated August 7, 2006, the IRS advised Citizens for Responsibility and Ethics in Washington ("CREW") that our request of July 27, 2006, made under the Freedom of Information Act ("FOIA") (No. 03-2006-01429), was exempt from disclosure based on FOIA Exemption 3. CREW hereby appeals that initial determination and requests that you reverse it for the reasons set forth below.

Our July 27, 2006 FOIA request sought any documents that reflect any instruction, direction, or suggestion for whether and how the IRS should investigate any 501(c)(3) organization or entity; any and all documents sent to or from the IRS and any Member of Congress or the staff of any Member of Congress that relate in any way to the investigation by the IRS of any 501(c)(3) organization; any documents that reflect any instruction, direction, or suggestion for whether and how the IRS should investigate any 501(c)(3) organization or entity; and any and all documents that reflect any general principle or instruction as to how the IRS exercises its investigatory powers.

In its initial determination the IRS claims that it is "prohibited by law from making such information public without a written authorization or Power of Attorney pursuant to 5 U.S.C. 552(b)(3) of the Freedom of Information Act. The statute for the (b)(3) exemption is 26 U.S.C. 6103." As explained more fully below, this determination is wrong as a matter of law and fact.

Exemption 3 authorizes an agency to withhold information only when one of two disjunctive requirements are met: 1) the statute requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or 2) the statute establishes particular criteria for withholding the information or refers to particular types of matters to be withheld. 5 U.S.C. § 552(b)(3) (2000). Once it is established that a statute is a nondisclosure statute and that it meets at least one of the disjunctive requirements of Exemption 3, an agency must next establish that the records in question fall within the withholding provision of the nondisclosure statute. CIA v. Sims, 471 US 159, 167 (1985).

Thus, it is not enough for the IRS to reflexively invoke § 6103 upon receipt of a request for documents under the FOIA, and proclaim that all of the requested documents are exempt from disclosure. Here, the IRS has failed to articulate how the documents CREW requested fall

within 26 U.S.C. § 6103.

Section 6103 only covers the confidentiality and disclosure of returns and return information. It provides, in pertinent part,

> Returns and return information shall be confidential, and except as authorized by this title – 1) no officer or employee of the United States . . . shall disclose any return or return information obtained by him in any manner in connection with his service as such an officer or an employee or otherwise or under the provisions of this section.

26 U.S.C. § 6103 (2006). Section 6103 further defines "**returns**" as "any tax or information return . . which is filed with the Secretary by, on behalf of, or with respect to any person," and defines "**return information**" as "a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions . . whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return. . ." 26 U.S.C. § 6103(b)(2). Here, not only is CREW **not** seeking the returns or return information of any 501(c)(3) organization, but Section 6103 is completely inapplicable to 501(c)(3) organizations.

The documents CREW seeks are, in large part, the principles, guides, and instructions that direct the IRS when it is investigating 501(c)(3) organizations – not return information. In other words, CREW is requesting those documents that contain a discussion of investigatory principles, procedures, legal analysis and legal conclusions for investigating 501(c)(3) organizations. Although CREW is not seeking the returns or return information of those 501(c)(3) organizations that have been investigated, nonprofit corporations organized under IRC § 501 (c)(3) are not subject to the same tax return and return information nondisclosure requirements of 26 U.S.C. § 6103 that apply to individual taxpayers. See 26 U.S.C. § 6104(b), 6033(b) (Every organization described in Section 501(c)(3) shall furnish annually information which includes its gross income, expenses, disbursements, and such other information for the purpose of carrying out the internal revenue laws as the Secretary may prescribe and this information "shall be made available to the public at such times and in such places as the Secretary may prescribe").

Accordingly, because the IRS has failed to justify its blanket assertion of Exemption 3 for the universe of documents responsive to CREW's FOIA request, its initial determination to withhold all responsive documents must be reversed.

Sincerely,

Kimberly D. Perkins
Counsel

Enclosure

2

## CIVIL COVER SHEET

JS-44
(Rev. 2/01 DC)

### I (a) PLAINTIFFS

Citizens for Responsibility and Ethics in Washington

### DEFENDANTS

Internal Revenue Service

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____ 11001
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____ 11001
(IN U.S. PLAINTIFF CASES ONLY)

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Anne L. Weismann
Kimberly D. Perkins
Citizens for Responsibility and Ethics in Washington
1400 Eye Street, N.W., Suite 450
Washington, D.C. 20005
202-408-5565

CASE NUMBER  1:06CV01811

JUDGE: Royce C. Lamberth

DECK TYPE: FOIA/Privacy Act

DATE STAMP: 10/19/2006

### II BASIS OF JURISDICTION
(SELECT ONE BOX ONLY)

○ 1 U.S. Government Plaintiff
○ 2 U.S. Government Defendant
○ 3 Federal Question (U.S. Government Not a Party)
○ 4 Diversity (Indicate Citizenship of Parties in item III)

### III CITIZENSHI
(FOR DIVER...

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

### IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Select one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

**○ A. Antitrust**

☐ 410 Antitrust

**○ B. Personal Injury/Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine

**○ C. Administrative Agency Review**

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

**○ D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

**○ F. Pro Se General Civil**

**Forfeiture/Penalty**
C 158
8 USC 157
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant)
☐ 871 IRS-Third Party 26 USC 7609

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation
☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 810 Selective Service
☐ 850 Securities/Commodities/Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act)

GG
THANK YOU
    CHECK TENDERED $        $350.00
        350.00
===== T O T A L =======
            100.00
510000   SPECIAL CIVIL FILING
CASE # 06-1811
            190.00
510000   SPECIAL CIVIL FILING
CASE # 06-1811
            60.00
086900   FILING FEE  CIVIL
CASE # 06-1811
===NO REFUND WITHOUT RECEIPT======
DC  1-1 FORREST    Receipt # 139636
10/19/06            2:24:34 PM
        WASHINGTON D.C.
U.S. DISTRICT COURT

| ○ G. Habeas Corpus/2255 | ○ H. Employment Discrimination | ⊙ I. FOIA/PRIVACY ACT | ○ J. Student Loan |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex, national origin, discrimination, disability, age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☒ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ K. Labor/ERISA (non-employment) | ○ L. Other Civil Rights (non-employment) | ○ M. Contract | ○ N. Three-Judge Court |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

⊙ 1 Original Proceeding   ○ 2 Removed from State Court   ○ 3 Remanded from Appellate Court   ○ 4 Reinstated or Reopened   ○ 5 Transferred from another district (specify)   ○ 6 Multi district Litigation   ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

5 USC sec. 552. U.S. Department of Homeland Security has failed to produce records in response to plaintiff's FOIA request.

**VII. REQUESTED IN COMPLAINT**   ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $ _____   Select YES only if demanded in complaint   JURY DEMAND: ☐ YES   ☐ NO

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   ☐ YES   ☒ NO   If yes, please complete related case form.

DATE   10/18/06   10/19/06   SIGNATURE OF ATTORNEY OF RECORD   _[signature]_

INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.